**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANDRES GOMEZ,<br><br>            Plaintiff,<br><br>            vs.<br><br>SB ONE BANCORP, RICHARD BRANCA, SALVATORE A. DAVINO, ANTHONY LABOZZETTA, MICHAEL F. LOMBARDI, ROBERT MCNERNEY, PATRICK E. BRADY, EDWARD J. LEPPERT, MICHAEL X. MCBRIDE, DOMINICK J. D'AGOSTA, MARK J. HONTZ, WALTER E. LOEFFLER, and PETER A. MICHELOTTI,<br><br>           Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Andres Gomez ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1. This is an action brought by Plaintiff against SB One Bancorp ("SB One" or the "Company") and the members of SB One's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which SB One will be acquired by Provident Financial Services, Inc. ("Provident" or "Parent") (the "Proposed Transaction").

2. On March 12, 2020, SB One and Provident issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated March 11, 2020 (the "Merger

Agreement") to sell SB One to Provident. Under the terms of the Merger Agreement, each SB One stockholder will receive 1.357 shares of Provident common stock for each share of SB One common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $208.9 million, based on Provident stock's closing price on March 11, 2020.

3. On April 24, 2020, SB One filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that SB One stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the projections for each of SB One and Provident and estimates regarding certain pro forma financial effects of the Proposed Transaction on Provident utilized by the Company's financial advisor Keefe, Bruyette & Woods ("KBW") in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by KBW; and (iii) KBW's and Company insiders' potential conflicts of interest. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, SB One's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains its principal executive offices in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of SB One.

9. Defendant SB One is a New Jersey corporation, with its principal executive offices located at 95 State Route 17, Paramus, New Jersey 07652. SB One is the holding company for SB One Bank, a full-service, commercial bank that operates regionally with 18 branch locations in New Jersey and New York. In addition to its branches and loan production offices, SB One Bank offers a full-service insurance agency, SB One Insurance Agency, Inc. and wealth services through SB One Wealth. SB One's common stock trades on the NASDAQ Global Select Market under the ticker symbol "SBBX."

10. Defendant Richard Branca ("Branca") has been a director of the Company since 2005.

11. Defendant Salvatore A. Davino ("Davino") has been a director of the Company since 2018.

12. Defendant Anthony Labozzetta ("Labozzetta") has served as President, Chief Executive Officer ("CEO"), and a director of the Company since January 2010.

13. Defendant Michael F. Lombardi ("Lombardi") has been a director of the Company since 2018.

14. Defendant Robert McNerney ("McNerney") has been a director of the Company since 2011.

15. Defendant Patrick E. Brady ("Brady") has been a director of the Company since 2005.

16. Defendant Edward J. Leppert ("Leppert") has served as Chairman of the Board for both the Company and SB One Bank since 2012, and has been a director of the Company since 2001.

17. Defendant Michael X. McBride ("McBride") has been a director of the Company since 2017.

18. Defendant Dominick J. D'Agosta ("D'Agosta") has been a director of the Company since 2018.

19. Defendant Mark J. Hontz ("Hontz") has been a director of the Company since 1998.

20. Defendant Walter E. Loeffler ("Loeffler") has been a director of the Company since 2018.

21. Defendant Peter A. Michelotti ("Michelotti") has served as Senior Executive Vice President, Chief Operating Officer ("COO"), and a director of the Company since January 2018.

22. Defendants identified in paragraphs 10-21 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

23. Provident is a Delaware corporation, with its principal executive offices located at 239 Washington Street, Jersey City, New Jersey 07302. Provident is the holding company for Provident Bank, which provides a comprehensive array of financial products and services through its network of branches throughout northern and central New Jersey, as well as Bucks, Lehigh and Northampton counties in Pennsylvania. Provident Bank also provides fiduciary and wealth management services through its wholly owned subsidiary, Beacon Trust Company. Provident's common stock trades on the New York Stock Exchange under the ticker symbol "PFS."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

24. SB One's primary business is ownership and supervision of SB One Bank. Through SB One Bank, SB One conducts a traditional commercial banking business, and offers services including personal and business checking accounts and time deposits, money market accounts and savings accounts. The Company structures its specific services and charges in a manner designed to attract the business of the small and medium sized business and professional community as well as that of individuals residing, working and shopping in the northern New Jersey and New York markets. SB One engages in a wide range of lending activities and offers commercial, consumer, mortgage, home equity and personal loans.

25. On January 30, 2020, SB One announced its fourth quarter and full year 2019 financial results, including fourth quarter net income of $5.3 million, or $0.57 per basic and diluted share, for the quarter, an increase of 126.6%, as compared to net income of $2.4 million, or $0.29 per basic and diluted share, for the same quarter 2018. For the full year 2019, the Company reported net income of $22.5 million, or $2.41 per basic share and $2.40 per diluted share, a record increase of 127.2%, as compared to $9.9 million, or $1.26 per basic share and $1.25 per diluted

share, for the previous year.  Additionally, as of December 31, 2019, the Company's total assets were $2.0 billion, an increase of $206.0 million, or 11.5%, as compared to total assets of $1.8 billion at December 31, 2018.  Defendant Labozzetta commented on the Company's record results, stating:

> Many would consider the operating environment for banks in 2019 to be very challenging.  With that in mind, I am extremely proud of our team's extraordinary accomplishments this year, which resulted in record earnings and strong momentum leading into 2020.  We ended the fourth quarter strong and I am happy to share the following achievements:  We crossed the $2 Billion asset threshold; our commercial loans and retail deposits grew at an impressive annualized growth rate of 22% and 12%, respectively; we expanded our core net interest margin approximately 7 basis points; and, our insurance company had double digit growth in commission income over the prior year.

**The Proposed Transaction**

26. On March 12, 2020, SB One and Provident issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

> ISELIN, N.J., March 12, 2020 -- Provident Financial Services, Inc. ("Provident") (NYSE: PFS), the parent company of Provident Bank, and SB One Bancorp ("SB One") (NASDAQ: SBBX), the parent company of SB One Bank, today announced that they have entered into a definitive merger agreement under which Provident will acquire SB One.
>
> The combined organization will have approximately $12 billion in assets and will rank as the 3rd largest bank headquartered in New Jersey. The merger brings together two high-performing companies with complementary geographies and business lines.
>
> Provident will acquire all of the outstanding shares of SB One in exchange for common shares of Provident. The exchange ratio will be fixed at 1.357 Provident shares for each share of SB One, resulting in an aggregate transaction value of approximately $208.9 million, based on Provident's closing stock price on March 11, 2020. The transaction consideration is presently valued at $22.09 per share for SB One shareholders.
>
> Christopher Martin, Chairman and CEO of Provident said, "We are excited about our partnership with SB One. This business combination provides attractive financial attributes to shareholders of both Provident and SB One. At $12 billion in assets, the combined company comfortably surpasses the $10 billion asset threshold and provides Provident a clear management succession plan with the addition of a

very skilled leader and banker in Tony Labozzetta, who will serve as President and Chief Operating Officer of the combined company."

Edward J. Leppert, Chairman of the Board of SB One stated, "Provident and SB One are two healthy and vibrant financial institutions who will be even stronger as one. This merger makes strategic, cultural, and fiscal sense. We could not be happier about becoming part of the Provident family and look forward to the many benefits this union will have for our customers, employees, and shareholders."

Anthony "Tony" Labozzetta, President and CEO of SB One said, "The merger between our two companies creates the size and scale necessary to compete in the markets that we serve. I am excited to help lead the franchise into the future with talented bankers from both of our organizations."

The merger agreement has been unanimously approved by the boards of directors of both companies. The merger is expected to close in the third quarter of 2020, subject to satisfaction of customary closing conditions, including receipt of required regulatory approvals and approval by the shareholders of SB One. In the transaction, SB One will merge into Provident, and SB One Bank will merge into Provident Bank, with Provident and Provident Bank being the surviving entities.

Key Transaction Highlights:

- Allows Provident to cross the $10 billion asset threshold in a meaningful way

- Establishes a clear succession plan for management to be realized with a proven leader in Tony Labozzetta, who has both community bank and large regional bank experience. Mr. Labozzetta and two additional SB One directors will join the Boards of Directors of Provident and Provident Bank

- Provides Provident with entry into attractive new markets in Bergen County, New Jersey as well as Astoria, New York. Provident intends to optimize the branch locations as part of the business combination

- Enhances fee-based business and fee generation provided by SB One Insurance Agency

- Strong cultural fit that combines two organizations with like-minded commitments to customers, communities and stockholders

**Insiders' Interests in the Proposed Transaction**

27.     SB One insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted

because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of SB One.

28. Notably, defendant Labozzetta has made agreements with Provident which entitle him to substantial benefits. For example, defendant Labozzetta reached a settlement agreement with Provident which, upon consummation of the Proposed Transaction, will terminate his SB One employment agreement in consideration for a lump sum cash settlement payment in the amount of $2,400,004. Provident also entered into an employment agreement with defendant Labozzetta under which he will serve an initial term, continuing through December 31, 2021, as COO and President of each of Provident and Provident Bank.

29. Additionally, several Company insiders have secured positions for themselves with the combined company. Under the terms of the Merger Agreement, three current SB One Board members will join the Provident board of directors upon completion of the Proposed Transaction, and each other SB One Board member will be invited to join a Provident advisory board to serve for an initial term of two years. Furthermore, the Company and SB One Bank have entered into employment agreements with Vito Giannola, Senior Executive Vice President and Chief Banking Officer; George Lista, President and CEO of SB One Insurance Agency, Inc. and three other executive officers. Pursuant to the Merger Agreement, Provident will maintain these employment agreements in accordance with their existing terms, which provide payments and benefits in the event the executive officer's qualifying termination event following a change in control, such as the Proposed Transaction.

30. Moreover, SB One insiders stand to reap substantial financial benefits for securing the deal with Provident. Pursuant to the Merger Agreement, all outstanding Company stock options will vest and convert into the right to receive cash payments. The following tables

summarize the value of the Company options Company insiders stand to receive:

| Name | SB One Stock Options (#) | Weighted-Average Exercise Price ($) | Equity Award Consideration ($) |
|---|---|---|---|
| Anthony Labozzetta | 35,742 | 10.92 | 224,867 |
| Vito Giannola | 10,000 | 11.40 | 58,100 |
| George Lista | — | — | — |
| All other executive officers as group (4 persons) | — | — | — |
| All non-employee directors as a group (9 persons, only one with stock options) | 4,000 | 12.83 | 17,520 |

31.     Furthermore, if they are terminated in connection with the Proposed Transaction, SB One's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation as set forth in the following table:

| Named Executive Officer | Cash ($)(1) | Equity ($)(2) | Pension/ NQDC ($)(3) | Perquisites/ Benefits ($)(4) | Tax Reimbursement ($) | Other ($) | Total ($) |
|---|---|---|---|---|---|---|---|
| Anthony Labozzetta | 2,400,004 | 783,711 | 782,781 | — | — | — | 3,966,496 |
| Vito Giannola | 600,001 | 315,554 | — | 49,328 | — | — | 964,883 |
| George Lista | 673,634 | 195,884 | — | 21,103 | — | — | 890,621 |

**The Proxy Statement Contains Material Misstatements or Omissions**

32.     Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to SB One's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

33.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the projections for each of SB One and Provident and estimates regarding certain pro forma financial effects of the Proposed Transaction on Provident utilized by KBW in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor KBW; and (iii) KBW's and Company insiders' potential conflicts of interest.

*Material Omissions Concerning SB One's and Provident's Financial Projections and Pro Forma Financial Effects of the Proposed Transaction on Provident*

34. The Proxy Statement omits material information regarding SB One's and Provident's financial projections and estimates regarding certain pro forma financial effects of the Proposed Transaction on Provident relied upon by KBW for its analyses. For example, the Proxy Statement expressly indicates that in connection with its fairness opinion, KBW reviewed and considered:

- publicly available consensus "street estimates" of SB One, as well as assumed long-term SB One growth rates provided to KBW by SB One management, all of which information was discussed with KBW by SB One management and used and relied upon by KBW at the direction of such management and with the consent of the SB One board of directors;

- publicly available consensus "street estimates" of Provident Financial, as well as assumed long-term Provident Financial growth rates provided to KBW by Provident Financial management, all of which information was discussed with KBW by Provident Financial management and used and relied upon by KBW based on such discussions, at the direction of SB One management and with the consent of the SB One board of directors; and

- estimates regarding certain pro forma financial effects of the Merger on Provident Financial (including, without limitation, the cost savings and related expenses expected to result or be derived from the Merger) that were prepared by, and provided to and discussed with KBW by, Provident Financial management and that were used and relied upon by KBW based on such discussions, at the direction of SB One management and with the consent of the SB One board of directors.

Proxy Statement at 55. The Proxy Statement fails, however, to disclose: (i) publicly available consensus "street estimates" of SB One; (ii) publicly available consensus "street estimates" of Provident, as well as assumed long-term Provident growth rates provided to KBW by Provident management; and (iii) estimates regarding certain pro forma financial effects of the Proposed Transaction on Provident (including, without limitation, the cost savings and related expenses expected to result or be derived from the Proposed Transaction) that were prepared by, and provided to and discussed with KBW by, Provident management and that were used and relied

upon by KBW based on such discussions, at the direction of SB One management and with the consent of the Board.

35. The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information Regarding SB One Utilized by SB One's Board of Directors and SB One's Financial Advisor" and "Opinion of SB One's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning KBW's Financial Analyses***

36. The Proxy Statement describes KBW's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of KBW's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, SB One's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on KBW's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

37. With respect to KBW's *Provident Financial Selected Companies Analysis* and *SB One Selected Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by KBW.

38. With respect to KBW's *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions analyzed by KBW.

39. With respect to KBW's *Relative Contribution Analysis*, the Proxy Statement fails to disclose and quantify the following balance sheet items for each of SB One and Provident used in the analysis: (i) Total Assets; (ii) Gross Loans Held for Investment; (iii) Total Deposits; (iv) Tangible Common Equity; (v) 2020 GAAP Net Income; and (vi) 2021 GAAP Net Income.

40. With respect to KBW's *Financial Impact Analysis*, the Proxy Statement fails to disclose: (i) the specific accretion/dilution figures resulting from the analysis; (ii) the pro forma assumptions (including, without limitation, the cost savings and related expenses expected to result from the merger and certain accounting adjustments and restructuring charges assumed with respect thereto) provided by Provident management and utilized by KBW; and (iii) Provident's tangible common equity to tangible assets ratio, Leverage Ratio, Common Equity Tier 1 Ratio, Tier 1 Capital Ratio and Total Risk-based Capital Ratio at closing as of September 30, 2020.

41. With respect to KBW's *Provident Financial Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the estimated excess cash flows that Provident could generate over the period from September 30, 2020 through December 31, 2025; (ii) Provident's 2026 earnings (iii) Provident's estimated December 31, 2025 tangible book value; (iv) quantification of Provident's implied terminal values; and (v) quantification of the inputs and assumptions underlying the discount rates ranging from 8.00% to 10.00%.

42. With respect to KBW's *SB One Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the estimated excess cash flows that SB One could generate over the period from September 30, 2020 through December 31, 2025; (ii) SB One's 2026 earnings; (iii) SB One's estimated December 31, 2025 tangible book value; (iv) quantification of SB One's implied terminal values; and (v) quantification of the inputs and assumptions underlying the discount rates ranging from 9.00% to 11.00.

43. Without such undisclosed information, SB One stockholders cannot evaluate for themselves whether the financial analyses performed by KBW were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full

disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which KBW's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

44.     The omission of this information renders the statements in the "Opinion of SB One's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning KBW's and Company Insiders' Potential Conflicts of Interest*

45.     The Proxy Statement fails to disclose material information concerning the conflicts of interest faced by KBW.

46.     The Proxy Statement sets forth:

> In addition to the present engagement, in the two years preceding the date of its opinion, KBW provided investment banking or financial advisory services to SB One and received compensation for such services. KBW acted as financial advisor to SB One in connection with its December 2018 acquisition of Enterprise Bank N.J. In the two years preceding the date of its opinion, KBW provided investment banking and financial advisory services to Provident Financial and received compensation for such services. KBW acted as financial advisor to Beacon Trust Company, a wholly-owned subsidiary of Provident Bank, in connection with its April 2019 acquisition of Tirschwell & Loewy, Inc. KBW may in the future provide investment banking and financial advisory services to SB One or Provident Financial and receive compensation for such services.

*Id*. at 66.  The Proxy Statement fails, however, to disclose the compensation KBW received from each of SB One and Provident for the past services performed for each of SB One and Provident.

47.     Additionally, the Proxy Statement fails to disclose material information concerning the conflicts of interest faced by SB One insiders.

48.     The March 12, 2020 joint press release announcing the Proposed Transaction sets forth:

> Christopher Martin, Chairman and CEO of Provident said, "We are excited about our partnership with SB One. This business combination provides attractive financial attributes to shareholders of both Provident and SB One. At $12 billion in

assets, the combined company comfortably surpasses the $10 billion asset threshold and provides Provident a clear management succession plan with the addition of a very skilled leader and banker in Tony Labozzetta, who will serve as President and Chief Operating Officer of the combined company."

\* \* \*

Anthony "Tony" Labozzetta, President and CEO of SB One said, "The merger between our two companies creates the size and scale necessary to compete in the markets that we serve. I am excited to help lead the franchise into the future with talented bankers from both of our organizations."
.

The Proxy Statement fails, however, to disclose the details of all employment and retention-related discussions and negotiations that occurred between Provident and SB One executive officers, including who participated in all such communications, when they occurred and their content.

49. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

50. The omission of this information renders the statements in the "Background of the Merger" and "Interests of Certain Persons in the Merger that are Different from Yours" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

51. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and SB One's public stockholders will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

52. Plaintiff repeats all previous allegations as if set forth in full.

53. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

54. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the projections for each of SB One and Provident and estimates regarding certain pro forma financial effects of the Proposed Transaction on Provident utilized by KBW in its financial analyses, the financial analyses performed by KBW, and potential conflicts of interest faced by KBW and Company insiders. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

55. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

56. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

57. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

58. Plaintiff repeats all previous allegations as if set forth in full.

59. The Individual Defendants acted as controlling persons of SB One within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of SB One, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

60. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

62. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

63. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, SB One's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of SB One, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to SB One stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 9, 2020

**WEISSLAW LLP**

By *s/ Mark. D. Smilow*
Mark. D. Smilow
Richard A. Acocelli (to be admitted *pro hac vice*)
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: msmilow@weisslawllp.com

*Attorneys for Plaintiff*